# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ARTHUR RODGERS | * | |
| Plaintiff | * | |
| v | * | Civil Action No. CCB-09-1962 |
| BOBBY SHEARIDIN, | * | |
| Defendant | * | |
| | ****** | |
| ARTHUR RODGERS | * | |
| Plaintiff | * | |
| v | * | Civil Action No. CCB-10-3110 |
| BOBBY SHEARIDIN , *et al.* | * | |
| Defendants | * | |
| | *** | |

## **MEMORANDUM**

Plaintiff brings this self-represented action against Warden Bobby Shearin,[1] Assistant Warden Richard J. Graham, Chief of Security Frank B. Bishop, Jr., Lt. Damon Thomas, Lt. C. Wedlock, and Case Management Specialists John White and Leslie Smith. ECF Nos. 1 & 5. Pending are defendants' motions to dismiss, or in the alternative for summary judgment. ECF Nos. 12, 38 & 47. Plaintiff has responded.[2] ECF Nos. 18, 42, 50 & 54. Plaintiff has also filed a motion requesting a hearing. ECF. No. 58. After review of the record, the court finds a hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2011).

---

[1] The Clerk shall amend the docket to reflect the correct spelling of defendant's name.

[2] In considering plaintiff's claim, the court has reviewed each of plaintiff's numerous filings, including all of the attachments/exhibits filed with his numerous motions for injunctive relief. *See* e.g. ECF Nos. 5, 20, 21, 24, 34, & 45.

## 1. Factual Background

Arthur Rodgers ("Rodgers"), a state inmate confined at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, filed a 42 U.S.C. § 1983 complaint for injunctive relief. His original complaint, which he subsequently withdrew, alleged that he had not received dental care. ECF Nos. 1 & 17. Plaintiff then filed a motion for injunctive relief alleging that Warden Shearin improperly assigned him to a double cell. ECF No. 5. Plaintiff claims that he suffers from psychological problems which make it dangerous to house him in a double cell. Specifically, he states that he suffers from insomnia and nervousness, and that when he hears a noise in the night he awakes in a "fugue" state wherein he believes he is being attacked and lacks control of his actions. In support of his claim, plaintiff has supplied copies of administrative remedy requests filed by several of his cell mates asking to be transferred from the cell. Each of these inmates claims that during the day they did not have any problem with plaintiff but at night, if they got up to use the toilet, plaintiff would awake and confront them in an angry voice. Plaintiff alleges that forcing him to double cell has exacerbated his cardio-vascular disease. ECF Nos. 5, 18, 42, 50 & 54.

Subsequently, plaintiff filed additional documents indicating that defendants Assistant Warden Richard J. Graham, Chief of Security Frank B. Bishop, Jr., Lt. Damon Thomas, Lt. C. Wedlock, John White, Case Management Specialist, and Leslie Smith, Case Management Specialist, have retaliated by placing him on administrative segregation due to his "jailhouse lawyering" and filing grievances and civil actions against prison personnel. ECF No. 1, *Rodgers v. Shearin*, Civil Action No. CCB-10-3110 (consolidated with this case).[3] Plaintiff also alleged that his right to

---

[3] Plaintiff again sought to expand this case by claiming that he has a wool allergy and has been improperly housed with inmates who have wool blankets and clothes. That claim is proceeding in another case. *See Rodgers v. Shearin*, Civil Action No. CCB-11-1585 (D. Md.). In other papers filed with the court, plaintiff claims that he has been denied adequate psychological care. That claim is not properly before the court. If plaintiff believes he has

congregate prayer was improperly infringed in violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA) because he was housed on administrative segregation. He also alleged that his mail, administrative remedies, and work assignment had all been tampered with in retaliation for his having filed this claim. *Id.*

The uncontroverted record demonstrates that a panel was convened to consider plaintiff's request for single cell status. ECF No. 12, Ex. 5. The history, contained in plaintiff's psychological records, revealed that he was placed in a single cell at the Maryland Penitentiary in 1995 by the Chief of Security. After two months he was transferred to a double cell where he stayed until 1997 when he was again granted single cell status. He was removed from single cell status in March of 2009. Plaintiff reported aggressive behaviors after nightmares including threatening gestures and postures, verbal threats and fights. None of the members of the panel, comprised of psychology and correctional staff members, believed plaintiff's mental status warranted a single cell. The panel concluded that plaintiff's discomfort in being housed in a "double cell may reflect some adjustment difficulties. He has the option to participate in treatment (therapy/medication) to assist with anxiety management."[4] *Id.* Documents further demonstrate that as a result of plaintiff's filing an administrative request regarding the denial of his request for single cell status, Bruce Liller, M.S., LPC, reviewed plaintiff's medical file, and interviewed Dr. Schellhase, M.D., Sherry Hafercamp, PsyD., and correctional officials. It was again noted that plaintiff did not qualify for single cell status. Liller noted in his investigation report that plaintiff's cellmates reported that plaintiff tried to intimidate them, his grant of single cell status at JCI was without a stated rationale, and there was no basis for single cell status due to mental illness. *Id.*, Ex. 6, p. 11-12.

---

been denied adequate care he is free to file a separate civil rights complaint naming the appropriate parties and setting forth his claim. The Clerk shall be directed to provide plaintiff a civil rights form packet to assist him in doing so.

[4] Plaintiff states that as a practicing Muslim he believes he may not take "mind altering" medication. ECF No. 18.

On June 15, 2010, plaintiff was placed on administrative segregation while authorities investigated evidence that plaintiff was "a danger to the security of the institution and/or inmates and/or staff." ECF No. 38, Ex. 1. The Investigative Report of that date indicates plaintiff was holding meetings in the courtyard in attempts to "rival other inmates against staff." *Id.* On June 18, 2010, the Case Management Team met and recommended that plaintiff remain on administrative segregation pending the outcome of the investigation. The recommendation was approved on June 22, 2010. *Id.* Plaintiff's status was reviewed on July 13, 2010, August 17, 2010, September 7, 2010, October 5, 2010, November 1, 2010, November 30, 2010, and December 28, 2010. *Id.*, ECF No. 47, Ex. 3. Plaintiff's status was maintained as the investigating officer repeatedly indicated that the investigation of plaintiff's activities was continuing and asked that plaintiff remain on administrative segregation pending the outcome of the investigation. *Id.* Plaintiff was released from administrative segregation on January 11, 2011, after the intelligence unit completed its investigation. It was recommended plaintiff be returned to general population, Housing Unit 2, where the recreation yards are "more controlled." ECF No. 47, Ex. 3. Defendants Shearin and Wedlock aver that plaintiff's assignment to administrative segregation had nothing to do with his litigation efforts and was not retaliatory in nature. ECF No. 38, Ex. 3, ECF No. 47, Ex. 1.

### 2. Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an

> otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### 3. Analysis

A.   Conditions of Confinement

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981). However, conditions which are merely restrictive or even harsh, "are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). Plaintiff has provided copies of medical notes indicating his subjective complaints of an exacerbation of his hypertension as a result of double celling. The medical records show that his medication was increased to control hypertension. The medical records do not, however, demonstrate a causal connection between the worsening of plaintiff's hypertension and his being forced to double cell.

Even were the court to conclude that plaintiff suffered serious injury as a result of being forced to double cell, the court does not find that defendants subjectively disregarded a serious risk of harm to plaintiff's safety. The subjective component requires "subjective recklessness" in the face of the serious condition. *See Farmer*, 511 U.S. at 839– 40. "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844. Defendants relied on the judgment of psychiatric providers that there was no medical/psychiatric reason to house plaintiff in a single cell. Given defendants' subjective beliefs concerning the lack of necessity for plaintiff to be held in a single cell, the court cannot find that defendants acted with a "sufficiently culpable state of mind." Summary judgment is appropriate.

B.     Administrative Segregation Assignment

In the prison context a liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U. S. 472, 484 (1995). Following the reasoning of the Supreme Court in *Sandin*, the court finds no liberty violation implicated in the decisions associated with plaintiff's placement on administrative segregation, as it is not atypical for inmates to be placed on administrative segregation for any number of reasons. *See Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). There is nothing in the record which shows that the nature of plaintiff's confinement in administrative segregation constituted the atypical hardships contemplated by *Sandin* or *Beverati*. Therefore, it does not implicate a liberty interest.[5]

As a prisoner, plaintiff is not entitled to the process due to persons who remain at liberty. "Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all." *Wilkinson v. Austin*, 545 U.S. 209, 225 (2005). He is not entitled to an adversarial hearing, witnesses, evidence introduction, or other trappings of a full trial. Plaintiff acknowledges that he was told the basis for his assignment to administrative segregation but maintains that the basis was not specific enough and was pretextual. While the court is mindful of plaintiff's contentions, as discussed below there is simply no evidence to support his bald allegations.[6] Expertise of prison officials in matters of security must be given due deference. *See*

---

[5] Plaintiff alleges he was not returned to his prison job when he was removed from administrative segregation. ECF No. 50. Prisoners do not have a constitutionally protected right to work while incarcerated, or to remain in a particular job once assigned. *Awalt v. Whalen*, 809 F. Supp. 414, 416-17 (E.D. Va. 1992); *Altizer v. Paderick*, 569 F. 2d 812, 815 (4th Cir. 1978). Moreover, removing a prisoner from a job simply does not rise to the level of cruel and unusual punishment. *See Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991).

[6] Plaintiff indicates his belief that he was assigned to administrative segregation due to the filing of this case. The court observes that he was not assigned to administrative segregation until eleven months after the instant case was filed. Plaintiff's argument that he was never served with a notice of inmate rule violation is not persuasive. Inmates may be assigned to administrative segregation for a host of reasons. ECF No. 47, Ex. Ex. 4 & 6.

Moreover, as noted, supra, there is simply no liberty interested implicated in assignment to administrative

7

*Sandin*, 515 at 482.

C.     Retaliation

In order to prevail on a claim of retaliation, plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).

Plaintiff's primary contention is that he was assigned to administrative segregation as retaliation for filing the instant case and assisting other inmates in preparing complaints against prison officials. ECF 50, Ex. 1, at 2. In order to state a retaliation claim based on the First Amendment, plaintiff must allege that his speech was protected by the First Amendment; that a retaliatory action on the part of the defendants adversely affected his constitutionally protected speech; and that there was a causal relationship between his speech and the defendants' retaliatory action. *See Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000).

In considering restrictions on prisoner's constitutional rights, the inquiry is whether the government action is "reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89 (1987). There is no heightened protection for prisoner speech containing legal advice. *See Shaw v. Murphy*, 532 U.S. 223, 231 (2001). Maryland Division of Correction regulations do not prohibit inmates from speaking to each other about legal matters and affirmatively permit inmates to assist each other in a one on one setting. ECF Ex. 7, DCD 200-2. The regulations do, however, prohibit inmates from being involved in disruptive activity, including unauthorized assembly, use of threatening language, and demonstration of insolence or disrespect. *Id.* Administrative Segregation Investigation Reports show that officials received information about the plaintiff "indicat[ing] that he [was] holding meetings in the courtyard in attempts to rival other

---

segregation. While administrative segregation involves restriction on movement and out of cell activity, inmates so assigned retain visiting privileges and access to library resources, legal resources, and chaplains. *Id.,* Ex. 2, 4, & 6.

inmates against staff." ECF 2. Ex.2, at 3-12. Officials notified plaintiff that "reasons exist to believe that [he was] dangerous to the security of the institution and/or inmates and/or staff" and that he would be placed on administrative segregation pending an investigation of his conduct. *Id.* at 2. Once the investigation was concluded, with no disciplinary charges having been brought, he was returned to general population.

Plaintiff maintains he was doing nothing more than advising other inmates of their rights. ECF 1, Ex. 2, at 2 (CCB 10-3110). Assuming plaintiff's contention is true, there is still nothing in the record to suggest that defendants were aware this is what plaintiff was doing and placed him on administrative segregation to stop him from doing so. Rather, the record evidence demonstrates that officials had information indicating that plaintiff posed a security threat, and the matter was investigated. Plaintiff remained on administrative segregation for approximately six months and was returned to population at the conclusion of the investigation. The court finds nothing improper or retaliatory about plaintiff's assignment to administrative segregation.

In support of his claim that he was placed on administrative segregation for having filed the instant case, plaintiff states that Sgt. Wedlock asked plaintiff whether he would dismiss the instant case after he had been reassigned to a single cell. Plaintiff states that when he declined to withdraw the case, Sgt. Wedlock "alluded to alternative housing in a double cell." *Id.* As noted, this case was filed some eleven months prior to plaintiff's placement on administrative segregation. Furthermore, nothing in the record suggests that Sgt. Wedlock was in charge of plaintiff's cell assignment, and plaintiff has offered nothing to support his speculation about the basis of his placement on administrative segregation.

In order to maintain a claim of retaliation for the exercise of the right to access the courts, plaintiff must allege sufficient facts to indicate that the alleged retaliation resulted in some adversity

to him sufficient to warrant concern about a chilling effect on the exercise of his right to access the courts. *See American Civ. Liberties Union v. Wicomico County*, 999 F. 2d 780, 785 (4th Cir. 1993). The court finds that even if true, a mere inquiry as to whether plaintiff would withdraw his claim after the relief he sought had been obtained does not constitute a chilling effect on plaintiff. To the contrary, plaintiff subsequently amended the instant complaint to include this claim and has filed additional proceedings. *See Ashann-Ra v. Commonwealth of Va.*, 112 F. Supp. 2d 559, 574 (W.D. Va. 200) (allegation officer placed inmate in segregation for threatening to sue when there were no specific factual allegations supporting retaliatory motive fails to state claim of retaliation for exercise of a protected right). Additionally, plaintiff has not demonstrated Wedlock was responsible for plaintiff's assignment to segregation, and record evidence demonstrates plaintiff was assigned to segregation pending the outcome of the investigation regarding his activities in the yard.

"In the prison context, we treat [claims of retaliation] with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" *Gill v. Mooney,* 824 F.2d 192, 194 (2nd Cir. 1987) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim). Mere conclusory averments, as provided by plaintiff in the instant case, are insufficient to withstand a dispositive motion. *See District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F. 2d 1083, 1085 (4th Cir. 1979).

D. Mail/Administrative Remedy Process

Plaintiff further alleges that his mail and administrative remedy requests have been tampered with in retaliation for his having filed numerous grievances and law suits against correctional

officials. *See* ECF 1, Ex. 2, at 2 (CCB 10-3110). The mailroom supervisor at NBCI avers that at no time was plaintiff's mail withheld, delayed or not processed when it was presented in compliance with approved DOC policies. She further asserts that plaintiff's mail is handled when received and in the same fashion as every other inmate's mail. ECF 47, Ex. 4. Plaintiff has provided documentation regarding non-delivery of his administrative remedy requests as well as affidavits from other inmates concerning their complaints regarding the handling of their mail. ECF 50, Ex. 2.

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). However:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U. S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.' *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997), quoting *Lewis*, 518 U.S. at 355. "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349.

To state a claim based on delay or non-delivery of legal mail, a prisoner must allege an adverse consequence as the basis for allegation that delay or non-delivery deprived him of meaningful access to courts. *See Lewis*, 518 U.S. at 349; *see also Morgan v. Montanye*, 516 F.2d

11

1367 (2d Cir. 1975) (single interference did not violate Sixth Amendment). Plaintiff has failed to demonstrate actual injury as a result of the alleged mishandling of his mail.

E. Free Exercise/Religious Land Use and Institutionalized Persons Act

Plaintiff alleges that his religious practices as a Sunni Muslim were substantially burdened when he was not permitted to attend communal worship while on administrative segregation. He alleges that this interference with his religious observances violates his rights under the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA). *See* ECF 1 (CCB 10-3110).

"Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). With respect to the free exercise of religion, prison inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility of punishment. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). That retained right is not unfettered. Prison restrictions that impact the free exercise of religion but are related to legitimate penological objectives do not run afoul of the constitution. *See Turner v. Safley*, 482 U.S. 78, 89-91 (1987). The test to determine if the restrictions are justified requires examination of whether there is a rational relation between the asserted governmental interest and the regulation in question. In addition, the court must examine: whether there are alternative means of exercising the right asserted; whether accommodation of the right will impact on the orderly operations of the prison; and whether readily available alternatives to the regulation would be less restrictive. *Id.*

Additionally, RLUIPA provides in part that:

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-(1) is in

> furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a) (2000).

Under RLUPIA, plaintiff has the burden of persuasion as to whether the government action substantially burdens his exercise of religious freedom. *See Adkins v. Kaspar*, 393 F.3d 559, 567 n. 32 (5th Cir. 2004); *Civil Liberties for Urban Believers v. Chicago*, 342 F.3d 752, 760 (7th Cir. 2003). Once a substantial burden is established, the government bears the burden of persuasion that its practice is in furtherance of a compelling government interest and is the least restrictive means of furthering that interest. *See Adkins*, 393 F.3d at 567 n. 32.

"The interest in preserving order and authority in the prisons is self-evident. Prison life, and relations between the inmates themselves and between the inmates and prison officials or staff, contain the ever-present potential for violent confrontation and conflagration." *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 132 (1977). Supervision of inmate meetings is a legitimate penological concern. *See Cooper v. Tard*, 855 F.2d 125 (3rd Cir. 1988) (holding that denial of a request by Muslim inmates to engage in unsupervised congregate prayer did not violate inmates' First and Fourteenth Amendment rights). Restricting group meetings may be necessary to prevent the possibility of riots or gang meetings. *See Jones v. Roth*, 950 F. Supp 254, 257 (N.D. Ill. 1996); *Johnson Bey v. Lane*, 863 F.2d 1308 (7th Cir. 1988) (holding that a regulation prohibiting inmates from conducting their own religious services was permissible); *In re Long Term Administration Segregation of Inmates Designated as Five Percenters*, 174 F.3rd 464, 470 (4th Cir. 1999) (upholding the denial of all congregate prayer for segregated inmates where other forms of religious exercise were permitted).

NBCI Chaplain Kevin Lamp avers that communal religious services are not permitted in the segregation units due to security concerns. Inmates confined to segregation are permitted to practice

their religious beliefs within the confines of their cells. ECF 47, Ex. 2. RLUIPA does not give prisoners an unfettered right to religious accommodation. Rather, the statute mandates "due deference to the experience and expertise of prison and jail administrators." *Lovelace v. Lee*, 472 F.3d 174, 210 (4th Cir. 2006), quoting *Cutter v. Wilkinson,* 544 U.S. 709, 723 (2005). Plaintiff has failed to show that defendants' actions were unreasonable and were taken without legitimate penological security justification.

Moreover, under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. State Gov't Code Ann., ' 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Plaintiff's complaint against state officials under RLUIPA, to the extent it seeks damages, is barred by the Eleventh Amendment. *See Sossaman v. Texas*, ___ U.S. ____, ____, 131 S.Ct. 1651, 1663 (April 20, 2011) (holding provision of RLUIPA creating private cause of action did not result in waiver of state's immunity from damages suit by prisoner whose free exercise rights were allegedly burdened).

To the extent plaintiff seek injunctive relief concerning his free exercise claim, defendants argue that plaintiff's request for injunctive relief has been rendered moot because he has been released from administrative segregation. The court agrees. Article III of the Constitution limits the judicial power to "actual, ongoing cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted). The "case-or- controversy" requirement subsists through all stages of federal judicial proceedings, both trial and appellate. *Id*. Thus, an actual controversy must exist "at all stages of review, not merely at the time the complaint is filed." *Arizonans for*

*Official English v. Arizona*, 520 U.S. 43, 67 (1997) (internal quotation marks and citations omitted).

A case becomes moot when the issues presented are "no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)) (alterations in original). Where injunctive relief is requested in an inmate's complaint, it is possible for events occurring subsequent to the filing of the complaint to render the matter moot. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (transfer of prisoner moots his Eighth Amendment claims for injunctive and declaratory relief); *see also Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 248-49 (4th Cir. 2005) (pre-trial detainee's release moots his claim for injunctive relief); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir.1987) (holding that the transfer of a prisoner rendered moot his claim for injunctive relief). As plaintiff has been released from administrative segregation, where his ability to attend communal prayer services was banned, his claim for injunctive relief is moot.

## 4. Conclusion

The motions to dismiss or for summary judgment shall be granted. A separate Order shall be entered reflecting the ruling set forth herein.

<u>September 22, 2011</u>  /s/
Date  Catherine C. Blake
 United States District Judge